UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND G. WAGNER,<br><br>        Petitioner,<br><br>    v.<br><br>RALPH M. DIAZ,<br><br>        Respondent. | Case No.: 1:12-cv-01782-LJ0-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

In 2010, Petitioner entered a guilty plea to one count of automobile theft with a prior theft conviction and one count of operating a chop shop. He admitted a prior prison term enhancement, pursuant and a prior serious felony conviction within the meaning of California's "three strikes" law. (Doc. 21, Ex. A, p. 2). He was sentenced to seven years in custody. Id. In the 12 grounds described in his petition for habeas relief[1], Petitioner asserts numerous claims related to ineffective assistance of counsel, that the trial court erred in refusing him to withdraw his plea, that the police illegally searched for and seized evidence and that they conspired to violate his Fourth Amendment rights. The Court disagrees relief is warranted and recommends the petition be **DENIED**.

///

///

---

[1] The California Court of Appeals, Fifth Appellate District (the "5th DCA"), affirmed Petitioner's conviction (Lodged Document ("LD") 3) and the California Supreme Court summarily denied his petition for review. (LD 4; 5).

## I. Background

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[2]:

On August 25, 2010, appellant, Raymond Glen Wagner, entered into a plea agreement in which he would admit one count of committing an automobile theft with a prior automobile theft conviction (Pen.Code, § 666.5, subd. (a), count one)1 in case No. BF133375A and one count of operating a chop shop (Veh.Code, § 10801, count one) in case No. BF133357B. Appellant would admit a prior prison term enhancement (§ 667.5, subd. (b)) and a prior serious felony conviction within the meaning of the three strikes law (§§ 667, subds.(a)-(e) & 1170.12, subds. (a)-(d)). The remaining allegations in both cases would be dismissed and appellant would receive a stipulated sentence of seven years.

Appellant executed felony advisement of rights, waiver and plea forms that set forth the terms of the plea agreement, the consequences of the plea, and the advisement and waiver of appellant's constitutional rights pursuant to Boykin/Tahl.2 The court established that appellant understood his rights, initialed, and executed the change of plea forms. The parties stipulated to a factual basis for the plea based on the law enforcement reports. Appellant pled no contest to both charges and admitted the special allegations. Appellant was represented at that time by James Rogers.

On September 23, 2010, the trial court granted appellant's motion to relieve James Rogers as counsel and substitute in Robert Dowd as appellant's attorney of record. On October 21, 2010, the sentencing hearing was continued because Dowd was not available. Attorney Arturo Revelo appeared for Dowd. On October 28, 2010, the court granted Dowd's request for a continuance so he could prepare a motion for appellant to withdraw his plea. Dowd did not appear for the next hearing date on November 16, 2010, because he had a family emergency. The court found good cause to trail the matter for one day.

On November 17, 2010, Dowd appeared with appellant and stated he had no objection to appellant being sentenced. Dowd explained to the court that appellant had retained him to file a motion to withdraw his plea. Dowd said he advised appellant on four different occasions and visited the witnesses appellant asked him to visit. Dowd stated that in his opinion, a motion for appellant to withdraw his plea would be without merit.

The court noted the total fixed term under appellant's plea agreement was seven years. Appellant told the court that he was trying to file a motion to withdraw his plea, claiming "good legal grounds." The court replied that appellant hired Dowd and Dowd indicated there were no legal grounds to make a motion for appellant to withdraw his plea. Dowd further explained he felt that before appellant entered into his plea bargain, witnesses should have been interviewed. Dowd interviewed the witnesses, spoke to appellant, and formulated the opinion that there were no grounds for appellant to withdraw his plea.

Appellant requested another continuance for a couple of days to get another attorney. The court said, "No" to appellant's request. Appellant asserted there were definite grounds for him to withdraw his plea. The court stopped appellant and stated the case had already been continued for two months. The court explained appellant had plenty of time to talk to another attorney. The court proceeded to sentence appellant to prison for four years for operating a chop shop, plus consecutive terms of one year for a prior prison term enhancement and two years for vehicle theft. Appellant's total prison term is seven years. The court awarded 100 days of actual custody credits and 50 days of conduct credits.

---

[2] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

(LD 3, pp. 1-2).

## II. Discussion

### A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### B. Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406 (2000).

In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court

explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d

4

911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

## III.   Review of Petitioner's Claims.

The instant petition itself alleges the following as grounds for relief: (1) ineffective assistance of trial counsel in failing to investigate case; (2) ineffective assistance of counsel in failing to point out obvious meritorious defenses; (3) ineffective assistance of counsel in failing to file a motion at trial pursuant to Cal. Pen. Code sec. 1538.5; (4) ineffective assistance of trial counsel in acting with malicious intent to punish Petitioner for not paying a retainer; (5) ineffective assistance of counsel in acting with a clear conflict of interest; (6) ineffective assistance of counsel by denying Petitioner his right to file a Pen. Code sec. 1538.5 motion to suppress evidence; (7) trial court abused its discretion in refusing to allow Petitioner to withdraw his plea; (8) unlawful search of Ralph Baker's neighbors and seizure of evidence; (9) conspiracy to violate Petitioner's Fourth amendment rights prior to illegal search; (10) illegal search exceeded its scope; (11) illegal search and seizure that violated "plain view" doctrine; (12) illegal search and seizure based on lack of probable cause for search.  (Doc. 1, pp. 5-7).[3]

   A.   <u>Ineffective Assistance of Trial Counsel</u>.

Petitioner first contends that he was denied his Sixth Amendment right to the effective assistance of trial counsel for various reasons.  Petitioner first raised this issue in the state habeas proceedings.  The last reasoned decision is that of the Superior Court:

> Petitioner contends that both James Rogers and Roger Dowd, his counsel were ineffective for failure to file a motion to suppress pursuant to P.C. Section 1538.5.  James Rogers visited petitioner and from his initial investigation found that petitioner had no defense. Mr. Rogers rendered his opinion, and petitioner pled on August 25, 2010.
>
> On September 23, 2010, petitioner replaced Mr. Rogers and hired Robert Dowd as retained counsel.  Petitioner contends that Mr. Dowd felt that he had a meritorious motion to file a motion to withdraw a guilty plea. The matter was continued at least three times to permit Mr. Dowd to prepare the motion, or he was unavailable due to the family emergency on November 16, 2010. The court continued the matter until November 17, 2010.
>
> At the sentencing hearing, counsel stated that he had no objection to sentencing because he investigated the matter including interviewing the witnesses petitioner told him to finding there was no merit to withdraw the guilty plea he felt the witnesses should have been interviewed prior to its entry, and informed petitioner at least four times of his opinion. Petitioner disputes this contention. Petitioner stated that he had legal grounds to withdraw the guilty plea, but the

---

[3] Because many of the claims overlap each other, for purposes of judicial economy, the Court will follow Respondent's organization of these twelve claims into four categories: ineffective assistance of counsel; conflict of interest; illegal search and seizure; and denial of Petitioner's motion to withdraw his plea.

transcript does not indicate that petitioner specified them. The trial court refused to grant petitioner another continuance to hire another attorney; that petitioner had plenty of time to find another attorney in the intervening time that there had been too much delay between September 23, 2010 and the present; and Mr. Dowd, petitioner's attorney found no merit in filing a withdrawal motion.

Petitioner filed an appeal, and in a remittitur filed October 24, 2011, the appellate court found no abuse of discretion by the trial courting refusing to grant a continuance given the length delay and more significantly that counsel specified his reasons on the record for refusing to file a withdrawal of guilty plea motion.

It appears that Mr. Dowd initially thought he could prevail in a suppression motion, but thought otherwise at the sentencing hearing. Due to the above-mentioned reasons, the court finds no merit in petitioner's arguments. Appellate counsel did not raise the illegality of search and seizure in her appeals to the Fifth District Court of Appeals and the California Supreme Court. Appellate counsel had the record before her, and impliedly found no merit to petitioner's contention. In re Robbins (1998) 18 Cal.4th 770, 810, 812. Part of the problem concerns whether counsel received payment. As the appellate court opined conduct of retained counsel is viewed differently from appointed counsel. People v. Ortiz (1990) 51 Cal.3d 975, 986. Petitioner may have legitimate claims for state bar adjudication. They do not rise to the level of ineffectiveness for habeas corpus.

On the basis of the foregoing, the petition for writ of habeas corpus is accordingly denied.

…

To prevail in a claim of ineffective assistance of counsel, petitioner must show that counsel's conduct fell below professional norms causing prejudice, which in its absence would result in a different outcome. Strickland v. Washington (1984) 466 U.S. 668, 694.

(LD 6).

### 2. Federal Standard.

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's

unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. ___, 129 S.Ct. at 1420. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Here, the state court identified the appropriate federal standard by applying Strickland. Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application of Strickland. For the reasons discussed below, the Court concludes that it was not.

3. Analysis.

As to deficient performance, Petitioner makes no showing that trial counsels' representation was deficient. As the state court noted, counsel apparently requested several continuances of the sentencing hearing in order to investigate whether grounds existed to bring a motion to vacate the plea, presumably based on an illegal search, including additional time to contact and interview witnesses and to speak with Petitioner. Counsel indicated to the court that he interviewed witnesses mentioned by Petitioner before formulating the opinion that no plausible legal grounds existed for bringing a motion to vacate

7

the sentence. As Respondent notes, this is entirely consistent with the record, which establishes, convincingly, that the initial police search was of the property of a parolee, that Petitioner and his stolen property were both discovered on that property during the search, and that Petitioner himself was then found to be a parolee.[4] Under such circumstances, no reasonable attorney would have concluded that grounds for a § 1538.5 motion existed. Hence, counsel's performance was not deficient for failing to move to withdraw Petitioner's plea based on an illegal search.

As for the prejudice component of Strickland, if no legal basis existed for bringing a motion to withdraw the plea, as discussed *infra*, Petitioner cannot complain that he was prejudiced by counsel's failure to bring that motion. Accordingly, the state court's rejection of this claim was not objectively unreasonable.

B. Illegal Search and Seizure.

Petitioner next contends that searches and evidence seized from those searches that resulted in the obtaining of inculpatory evidence were unlawful.

1. The Superior Court's Decision.

The Superior Court rejected this claim as follows:

> Petitioner contends that the officers used the pretext of a parole search involving a Ralph Baker to enter the premises. He claims that he has a reasonable expectation of privacy because a tarp covered the barn. He contends that the officers found he was on parole after his arrest and then conducted a search of the barn where tools to dismantle cars were used including the fact that petitioner had one of those tools in his hand.
>
> Because there is no merit in petitioner's contentions, we deny the petition for writ of habeas corpus. On August 9, 2010, Officers with the Bakersfield City Police and California Highway Patrol conducted a search of a ranch where petitioner was using a barn. Initially, the search was limited to the premises occupied by Ralph Baker. However, police noticed petitioner making furtive movements in and out of the barn which was covered by a tarp.
>
> When the tarp was partially opened, officers noticed suspicious activity going on in the shop. At the time the dismantling shop was occupied by petitioner, Larry Merriman, a codefendant and Rebecca Kuhn, petitioner's girlfriend. Prior to conducting the search of the barn, officers ascertained that petitioner was on parole. Petitioner admits that he was on parole and subject to a parole search. However, he contends that not only was the barn not in plain view, but officers had no articulable suspicion of criminal activity to detain him.

---

[4] Petitioner contends that he could not be subjected to a parolee search when the officers were unaware he was a parolee. However, Petitioner does not cite, and the Court is not aware of, any legal authority supporting such a position.

When the officers learned of the activity going on in the barn including the presence of dismantling tools and truck parts, they detained the occupants. This is permissible under <u>Terry v. Ohio</u> (1968) 392 U.S. 1. Upon learning that petitioner was on parole, the officers interviewed Rebecca Kuhn who stated that petitioner directed the dismantling of the vehicles so they could be soled [sic] to recycling facilities for money.

When asked why a tarp would cover the barn on such a hot day, Ms. Kuhn stated that petitioner directed it be done. Officers interviewed Larry Merriman who stated that he was assisting petitioner at his direction. Petitioner was Mirandized pursuant to <u>Miranda</u> <u>v. Arizona</u> (1966) 384 U.S. 436. Petitioner stated that he was just getting rid of the junk in the barn as directed by the property manager, Robert Haynes. He admitted using the barn on occasion, denied complicity, and stated that the barn was being used to store hay, although there was no hay inside.

A further search of the premises found a motorcycle and other vehicles in various stages of disassembly. When officers ran checks on the vehicles at least two of them were stolen. Another vehicle belonged to a company owned by Skip Houghton was discovered in a shed. When confronted about the stolen motorcycle and truck in the barn, petitioner stated that he received them from John and Randy respectively but declined to provide their last names and contact information.

Mr. Houghton did not know that the truck had been stolen until contacted by the police. A GPS reading revealed that the truck was in another area of Bakersfield for three months. He denied giving petitioner or Merriman permission to take the truck. Other owners of the vehicles discovered on the premises denied giving petitioner permission to take them.

The police officer along with an officer from the California Highway Patrol interviewed petitioner in jail on August 10, 2010 after Mirandizing him again. Petitioner admitted that he knew about the vehicles in the shed; that the tools belonged to him; that he knew the vehicles were stolen; but denied any complicity in the theft. He stated that he was getting rid of some stuff at the direction of Robert Haynes. A visit to the recycling center owned by Daniel Coy revealed that petitioner brought 3,000 pounds of metal and received $216.00 compensation. Parts of a stolen truck were discovered at that center.

The court notes that illegal search and seizure claims are not cognizable in habeas corpus. <u>In re Harris</u> (1993) 5 Cal.4th 813, 836. However, since petitioner is alleging ineffective assistance of counsel, the court will examine the merits of petitioner's argument. Had petitioner not been on parole, petitioner would have a stronger case. However, since he is on parole he is under supervision though not behind prison walls. <u>People v. Hunter</u> (2006) 140 Cal.App.4th 1147, 1152; <u>People v. Denne</u> (1956) 141 Cal.App.2d 499,507. Although initially the parole search involved a check on Ralph Baker, the officers noticed suspicious activities going on within the barn when petitioner left the tarp partially open and kept entering and exiting the tarp covering the barn. The California Supreme Court held that there need be no suspicion by officers to commence a parole search. <u>People v. Reyes</u> (1998) 19 Cal.4th 743, 752. *Because petitioner is under supervision, his expectation of privacy is greatly diminished*. <u>People v. Smith</u> (2009) 172 CaI.App.4th 1354, 1361 (citing) <u>Sampson v. California</u> (2006) 543 U.S. 843, 852. The reason for the relaxed standard is society's interest in continued supervision of parolees to ensure that they are complying with the law, or in this instance breaking the law. <u>Id</u>.

9

>Another problem is that the activity occurring in the barn was in plain view when officers observed the activities when the tarp was partially open. Objects or activities discovered in plain view is an exception to the warrant requirement. People v. Camacho (2000) 23 Cal.4th 824,832; Horton v. California (1990) 496 U.S. 128,136. Here, the officers noticed suspicious activity, detained petitioner and the occupants of the barn, and had a right to be in the barn since petitioner was on parole and subject to a search condition. Since petitioner was on parole for vehicle theft, the search did not exceed the scope of search conditions which is generally forbidden. People v. Bravo (1987) 43 Cal.3d 600, 606. Search clauses in probation and parole release order typically specify that the defendant, any property under the defendant's control, and the residence may be search without a warrant at any time by any law enforcement officer. People v. Reyes (1998) 19 Cal.4th 743, 746; People v. Lewis (1999) 74 Cal. 4th 662, 666. *California Judges Benchbook 2d Ed. Search and Seizure Sees. 5.142, 5.149, 5.143 pp.388-389.*
>
>Before undertaking the search, officers ascertained that petitioner was on parole. Because the search is valid, there is no invalidity under the fruit of the poisonous tree doctrine. Wong Sun v. U.S. (1963) 371 U.S. 471.

(LD 6).

2. Federal Standard.

A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052 (1976); Moormann v. Schriro, 426 F.3d 1044, 1053 (9th Cir. 2005); Woolery v. Arvan, 8 F.3d 1325, 1326 (9th Cir. 1993), *cert denied*, 511 U.S. 1057 (1994). The Court may inquire only as to whether petitioner had a fair opportunity to litigate his claim, not whether petitioner did litigate nor even whether the court correctly decided the claim. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); see also, Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under Stone was necessary even when the petitioner never moved to suppress).

The policy behind the Stone court's analysis is that the exclusionary rule is applied to stop future unconstitutional conduct of law enforcement. Stone, 428 U.S. at 492. However, excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost. See Stone, 428 U.S. at 489-90; Woolery, 8 F.3d at 1327-28. Thus, the Ninth Circuit has described the rationale for this rule by saying:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

Woolery, 8 F.3d at 1326; see also  Stone, 428 U.S. at 493-494.

        3.  Analysis.

Petitioner's Fourth Amendment claim was never raised in state court; however, under California law, Penal Code § 1538.5 was available to Petitioner, should he or his counsel have chosen to litigate the legality and constitutionality of the search.  That they did not do so is entirely irrelevant to the operation of Stone v. Powell to bar such a claim on habeas. Ortiz-Sandoval, 81 F.3d at 899; Gordon, 895 F.2d at 613.  Petitioner had a full and fair opportunity to litigate that issue, and that is all that Stone requires.  Accordingly, habeas review of this claim is prohibited.

Petitioner attempts to circumvent Stone's bar by arguing in the traverse that grounds existed to file a motion to suppress and thus trial counsel was ineffective in not making such a motion.  (Doc. 25, pp. 12-18).  In so doing, Petitioner discusses numerous Fourth Amendment requirements and the various exceptions to the warrant requirement established in federal law.  (Id.).  However, this ignores the fact that Petitioner was a parolee, as was Baker, whose property was the subject of the search, and on whose property Petitioner was engaged in criminal conduct.

 The Fourth Amendment to the United States Constitution protects against unreasonable searches, in addition to unreasonable seizures. (U.S. Const., 4th Amend.)  A warrantless search is presumed to be unreasonable unless the search meets one of the few recognized exceptions. (Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). The search of a parolee is one such exception. (See United States v. Knights, 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); People v. Reyes, 19 Cal.4th 743, 753, 80 Cal.Rptr.2d 734, 968 P.2d 445 (1998)).

In Reyes, the California Supreme Court held that, even in the absence of particularized suspicion, a parole "search is reasonable within the meaning of the Fourth Amendment as long as it is not arbitrary, capricious or harassing." (People v. Reyes, supra, 19 Cal.4th at 753, 80 Cal.Rptr.2d 734, 968 P.2d 445.  Moreover, in California, the arrest of a parolee is lawful if a parole officer reasonably believes a parolee is in violation of parole.  United States v. Rabb, 752 F.2d 1320, 1324 (9th Cir. 1984);

see People v. Villareal, 262 Cal.App.2d 438, 447 (1968) (arrest of parolee for parole violation does not require probable cause).

Petitioner's detailed analysis of whether each move by police officers was accompanied by probable cause or met a specific exception to the warrant requirement begs the obvious question that, as a parolee in California, Petitioner was subject to both a search and arrest without probable cause. Once officers observed suspicious activity taking place at Baker's property, and then discovered Petitioner on site in possession of property likely to be used in a chop shop, and given Petitioner's prior criminal history and his status as a parolee, officers were sufficiently armed with a reasonable belief that criminal activity was afoot and that Petitioner was involved. That is all the law requires. Under those circumstances, it is irrelevant that other exceptions to the warrant requirement were not applicable or that full probable cause for a non-parolee search may have been lacking.

### C. Counsel's Conflict of Interest

Petitioner also claims that his counsel had a conflict of interest with Petitioner and acted "maliciously" such as to violate the federal constitution.

#### 2. Federal Standard.

In addition to the clearly established law under Strickland and its progeny that was discussed previously, in order to establish a violation of the right to effective assistance of counsel based on a conflict of interest, the petitioner must show more than "a mere theoretical division of loyalties," but must instead prove that an actual conflict of interest "adversely affected his counsel's performance." Mickens v. Taylor, 535 U.S. 162, 167, 171-172 & n. 5 (2002); Pizzuto v. Ramirez, 783 F.3d 1171, 1178 (9th Cir. 2015). Absent such a showing, the petitioner has not established the "constitutional predicate for his claim." Mickens, 535 U.S. at 175.

#### 3. Analysis.

Petitioner's claim of a conflict of interest appears to be entirely premised on his allegation that, when Petitioner asked his attorney about filing a motion to withdraw his plea and a motion to exclude the fruit of an illegal search, counsel noted that Petitioner had not paid his fees. However, as Respondent correctly points out, such an innocuous comment, by itself, does not in any way establish a conflict of interest. Throughout the legal profession, attorneys frequently represent clients, both civil

and criminal, who may be in arrears on their legal fees. Nevertheless, they are under an ethical obligation to continue zealous representation of the client as long as they are counsel of record and regardless of the status of the client's account. Petitioner does not provide any evidence that the mere fact that he was in arrears on his payments to defense counsel affected the attorney's decision not to bring the motions Petitioner sought. Indeed, to the contrary, the record clearly shows that counsel believed no legal merit for those motions existed. Furthermore, Petitioner has been unable to proffer any additional evidence that either motion had legal merit that was ignored by defense counsel.

Finally, Respondent correctly points out that no "clearly established" federal law from the Supreme Court exists that a conflict of interest implicating the Sixth Amendment arises when an attorney points out to the client that he owes the attorney money. As discussed more fully in the following section, the state court's conclusion that no legal merit existed for either the motion to withdraw the plea or for a motion to suppress the search inevitably leads to the conclusion here that, even if a conflict of interest could be shown by counsel's comments, any error would have been harmless since the motions lacked legal merit. In sum, Petitioner has failed to meet either prong of Strickland and the claim should be rejected.

### D. Denial of Motion to Withdraw Plea

Finally, Petitioner contends that the trial court erroneously denied his motion to withdraw his plea.

#### 1. The 5th DCA's Opinion.

The 5th DCA rejected Petitioner's argument as follows:

> Appellant argues the trial court's failure to grant him a continuance so he could hire a new attorney to file a motion for him to withdraw his plea "short-circuited the process of adjudication and deprived [him] of any meaningful opportunity to be heard." In support of his contention, appellant relies on People v. Brown (1986) 179 Cal.App.3d 207 (Brown) and People v. Osorio (1987) 194 Cal.App.3d 183 (Osorio) (disapproved on another ground in People v. Johnson (2009) 47 Cal.4th 668, 681–682).
>
> In Brown, trial counsel informed the court at sentencing that the defendant wanted to withdraw his plea, but that in her opinion, there was no "legal basis" for such a motion, and she was not making the motion for him. (Brown, supra, 179 Cal.App.3d at p. 211.) The defendant told the court that at the time he entered his plea, he "wasn't in the right frame of mind" (ibid.) because "a death ... had [him] shook up" (id. at p. 213). The defendant asked the trial court if he could withdraw his plea and obtain another attorney, but the trial court refused to grant either request. (Id. at pp. 211–213.)

The Brown court, noting that a criminal defendant has a right to be represented by counsel at all stages of the proceedings, concluded that the defendant was deprived of his right to make an effective motion to withdraw his plea. (Brown, supra, 179 Cal.App.3d at pp. 213–214.) Brown remanded the case to allow the defendant, represented by counsel, to move to withdraw his plea, with instructions for a Marsden hearing should counsel continue to refuse to bring the motion. Brown stated that it was not suggesting that counsel is required to make a frivolous motion or "compromise accepted ethical standards." (Brown, at p. 216.)

Osorio, supra, 194 Cal.App.3d 183, a decision from this court, followed Brown. In Osorio, the defendant stated at sentencing that he wanted to withdraw his plea because "'he didn't understand what he was pleading to.'" (Id. at p. 186.) Trial counsel represented to the court that there appeared to be good grounds for a motion to withdraw the plea, but refused, "'in good conscience,'" to bring the motion because withdrawal of the plea would result in reinstatement of counts dropped under the plea agreement. (Id. at p. 188.)

Osorio, referring to Brown, stated, "We believe that counsel's representation to the court that there was a colorable basis for the motion to withdraw the guilty plea requires a similar disposition of the present appeal." (Osorio, supra, 194 Cal.App.3d at p. 189.) We remanded the case to allow defendant to bring a motion to withdraw the plea. (Ibid.) Brown and Osorio hold that a criminal defendant has a right to make a motion to withdraw his or her plea, and to be represented by counsel in the effort, if nonfrivolous grounds exist for withdrawing the plea.

In Brown, the attorney only stated that there was no legal basis for a motion to withdraw the defendant's plea without any explanation why this was so. In contrast to the attorney in Brown, Dowd explained to the court he had interviewed witnesses, talked to the appellant three or four times, and found no legal basis to bring a motion for appellant to withdraw his plea. Dowd explained to the court how he investigated the prospective motion for appellant to withdraw his plea. This is different from Brown where the attorney merely made a conclusory statement that there was no legal basis to file a motion.

In Osorio, counsel told the court he could not bring such a motion because the defendant received a plea agreement that included dismissed allegations. Here, unlike the attorney in Osorio, Dowd investigated the merits of filing a motion and explained to the court why he would not do so. This is in contrast to the defense attorney in Osorio who outright refused to even investigate the possibility of a motion for the defendant to withdraw his plea.

Because the trial court established from Dowd that there was no legal basis for appellant to proceed with a motion to withdraw his plea, as well as how Dowd investigated the case and worked on the motion, the facts of this case are inapposite to those in Brown and Osorio. Appellant did not refute Dowd's representations that he interviewed witnesses and discussed the matter three or four times with appellant. Having established from Dowd that there was no legal basis, and why there was no legal basis, to pursue the motion, the trial court was not under the same obligation as the trial courts in Brown and Osorio to entertain other potential grounds for the motion from appellant. The one pending matter before the trial court was appellant's request for a continuance to find a new retained attorney to file a motion the trial court had just determined was without merit.

Generally, the granting of a continuance is within the discretion of the trial court. A defendant who desires to retain private counsel must act with diligence and may not demand a continuance if he or she is unjustifiably dilatory in obtaining counsel. (People v. Courts (1985) 37 Cal.3d 784, 790–791.) Although a defendant who has retained counsel has great latitude in deciding whether to keep that attorney, a trial court may still deny a motion to substitute counsel if it disrupts the orderly processes of justice or if it is untimely. (Ortiz, supra, 51 Cal.3d at pp. 983, 986–989.)

> Appellant's sentencing hearing was originally set for September 23, 2010, but was continued so he could substitute Rogers with Dowd as his counsel of record to pursue a motion to withdraw his plea. The sentencing hearing was continued three more times, twice because Dowd was unavailable, and once because Dowd requested more time to prepare a motion for appellant to withdraw his plea. After determining that there was no merit to a motion for appellant to withdraw his plea, and after having continued the sentencing hearing four times already, the trial court could rightfully conclude that appellant's request for new retained counsel was repetitive, untimely, and would interfere with the orderly processes of justice. The trial court did not abuse its discretion in denying appellant's motion for a fifth continuance of the sentencing hearing.

(LD 3).

### 2. Federal Standard And Analysis

Preliminarily, because Petitioner argues only that the state court erred in applying state statutory law, his claim is not cognizable on federal habeas review. (Doc. 1, p. 6). Federal courts may grant a writ of habeas corpus only if the petitioner's conviction or sentence is in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (noting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); see also Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir.2000) (en banc) (noting that "not every state court abuse of discretion" amounts to a federal constitutional violation).

Petitioner's sole argument in this claim is that the state court abused its discretion in denying his motion to withdraw his plea. (Doc. 1, p. 6). However, while in his petition Petitioner cites the Fifth and Fourteenth amendment due process guarantees, otherwise Petitioner cites only state law relating to whether the trial judge abused his discretion in refusing to allow Petitioner to withdraw his plea. (Doc. 1, pp. 28-29). Merely placing a "due process" label on an alleged violation does not entitle Petitioner to federal relief. Langford v. Day, 110 F.3d 1386, 1388-89 (1996). Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), *citing* Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion).

In California "[w]ithdrawal of a ... plea is left to the sound discretion of the trial court. A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion." (People v. Huricks (1995) 32 Cal.App.4th 1201, 1208, 38 Cal.Rptr.2d 592; see Pen.Code, § 1018.) Nothing in that standard even remotely suggests that a state court judge's exercise of such discretion would give rise to a federal due process violation. Accordingly, this claim does not warrant federal habeas relief. See, e.g., Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir.2006) (habeas petitioner's allegation that state court misapplied state law or "departed from its earlier decisions" does not provide basis for habeas relief); Williams v. Borg, 139 F.3d 737, 740 (9th Cir.1998) (Federal habeas relief is available "only for constitutional violation, not for abuse of discretion."), cert. denied, 525 U.S. 937, 119 S.Ct. 353, 142 L.Ed.2d 292, (1998).

However, even assuming, arguendo, that a federal claim could be stated, it would fail on the merits. As the Fifth DCA comprehensively explained, neither defense counsel nor Petitioner could articulate any legitimate legal basis for the motion to withdraw the plea or the motion to suppress evidence. Petitioner had already been granted a continuance to retain Dowd, his new counsel, and Dowd had requested and received several continuances as well to explore filing such motions as Petitioner sought to file. The trial court finally denied the fifth request for a continuance because it could perceive no justifiable reason to postpone sentencing in light of counsel's statement that he found no legal merit in the motions Petitioner had wished to file. Nor does Petitioner provide any additional reasons in either his petition or traverse. Accordingly, the state court's adjudication of this issue was objectively reasonable. Hence, the claim should be denied.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be DENIED.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be served and filed **within ten days** after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 28, 2015**                             **/s/ Jennifer L. Thurston**
                                                                      UNITED STATES MAGISTRATE JUDGE